UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FERRY JUSUF and MAXIMINO PALMA, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class,

Plaintiffs,

-against-

GOURMET TECH CORP. d/b/a MARCHE MADISON, MADISON GOURMET, LTD. d/b/a MARCHE MADISON, and KYUNG HO KIM,

Defendants.

Civil Action No.: 1:25-cv-05700

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Ferry Jusuf and Maximino Palma ("Plaintiffs"), on behalf of themselves, the FLSA Collective Plaintiffs, and the Class, by and through their attorneys, AHNE & JI, LLP, upon their knowledge and belief, and as against Gourmet Tech Corp. d/b/a Marche Madison, Madison Gourmet, Ltd. d/b/a Marche Madison, and Kyung Ho Kim (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs, through the undersigned counsel, bring this action against Gourmet Tech Corp. d/b/a Marche Madison, Madison Gourmet, Ltd. d/b/a Marche Madison, and Kyung Ho Kim to recover damages for egregious violations of the state and federal wage and hour laws arising out of Plaintiffs' employment at Marche Madison.

2. As a result of Defendants' violations of Federal and State Labor Laws delineated below, Plaintiffs bring this action on behalf of themselves and all similarly situated employees at Marche Madison, pursuant to the Fair Labor Standards Act (the "FLSA"), New York Labor Law

(the "NYLL"), and Wage Theft Prevention Act (the "WTPA"), seeking injunctive and declaratory relief against Defendants for their unlawful actions and to recover unpaid overtime wages, spread-of-hours premiums, liquidated damages, statutory damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and for such other, further, and different relief as the Court deems just, proper, and equitable.

**JURISDICTION**

3. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337, and 1343.

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under the NYLL pursuant to 28 U.S.C. § 1367.

**VENUE**

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred at Marche Madison, both of which are located in the Southern District of New York.

**THE PARTIES**

**Plaintiff Ferry Jusuf**

6. Plaintiff Ferry Jusuf ("Mr. Jusuf") is an individual residing in Queens County, New York

7. Mr. Jusuf worked as an organizer, stocker, loader, cashier, cleaner, and sandwich preparer at Marche Madison from approximately January 15, 2024 to approximately July 7, 2025.

**Plaintiff Maximino Plama**

8. Plaintiff Maximino Palma ("Mr. Palma") is an individual residing in New York County, New York.

9. Mr. Palma worked as a sandwich, cold salad, and fruit preparer at Marche Madison from approximately March 18, 2024 to approximately July 7, 2025.

**Defendant Gourmet Tech Corp. d/b/a Marche Madison**

10. Defendant Gourmet Tech Corp. d/b/a Marche Madison is a New York Corporation that owns, operates, and does business as Marche Madison, a deli/restaurant, located at 630 1st Avenue, New York, NY 10016.

11. Defendant Gourmet Tech Corp. d/b/a Marche Madison was and still is a covered employer within the meaning of the FLSA and NYLL in that throughout Plaintiffs' employment, it employed Plaintiffs and other similarly situated employees by, for example, hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

12. Marche Madison applies the same employment policies, practices, and procedures to all non-exempt employees in its operation, including practices concerning their compensation, wage payments, and job site procedures.

13. At all relevant times, Defendant Gourmet Tech Corp. d/b/a Marche Madison was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

14. At all relevant times, the work performed by Plaintiffs, the FLSA Collective Plaintiffs, and the Class was directly essential to the business operated by Defendants.

15. Defendant Gourmet Tech Corp. d/b/a Marche Madison has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint.

**Defendant Madison Gourmet, Ltd. d/b/a Marche Madison**

16. Defendant Madison Gourmet, Ltd. d/b/a Marche Madison is a New York Corporation that owns, operates, and does business as Marche Madison, a deli/restaurant, located at 931 Madison Avenue, New York, NY 10021.

17. Defendant Madison Gourmet, Ltd. d/b/a Marche Madison was and still is a covered employer within the meaning of the FLSA and NYLL in that throughout Plaintiffs' employment, it employed Plaintiffs and other similarly situated employees by, for example, hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

18. Defendant Madison Gourmet, Ltd. d/b/a Marche Madison applies the same employment policies, practices, and procedures to all non-exempt employees in its operating, including practices concerning their compensation, wage payments, and job site procedures.

19. At all relevant times, Madison Gourmet, Ltd. d/b/a Marche Madison was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereafter.

20. At all relevant times, the work performed by Plaintiffs, the FLSA Collective Plaintiffs, and the Class was directly essential to the business operated by Defendants.

21. Madison Gourmet, Ltd. d/b/a Marche Madison has had an annual gross volume of sales in excess of $500,000.00 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Gourmet Tech Corp. d/b/a Marche Madison.

**Gourmet Tech Corp. d/b/a Marche Madison and Madison Gourmet, Ltd. d/b/a Marche Madison are a Single Integrated Enterprise and Joint Employers**

22. Gourmet Tech Corp. d/b/a Marche Madison and Madison Gourmet, Ltd. d/b/a Marche Madison (collectively, "Marche Madison Entities" or "Marche Madison") have a high

degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

23. Marche Madison owns and operates two locations in Manhattan, New York – 630 1st Avenue, New York, NY 10016 and 931 Madison Avenue, New York, NY 10021.

24. Upon information and belief, Marche Madison Entities share and commingle the same inventory of, *inter alia*, food ingredients, liquor inventory, materials, and supplies to prepare and serve their food menus for their patrons.

25. Upon information and belief, Marche Madison Entities interchange and share employees.

26. There are employees who worked, or work, at both locations throughout their employment with Defendants.

27. Upon information and belief, Marche Madison Entities share tools and equipment used for their interrelated business operations.

28. Upon information and belief, Marche Madison Entities share the payroll methods.

29. Throughout Plaintiffs' employment period, Marche Madison Entities have had unified operations sharing the same inventory, staff, and recordkeeping systems.

30. Marche Madison Entities share the same owner, Defendant Kyung Ho Kim.

31. Marche Madison Entities are a single integrated enterprise in that they cumulatively had an annual gross volume of sales in excess of $500,000.00 in each of the three years before the filing of this Complaint.

32. In addition to operating as a single integrated enterprise, Marche Madison Entities share and codetermine the essential terms and conditions of the employment of employees,

including Plaintiffs, and exercise sufficient control over them to be considered Plaintiffs' "employer" under the FLSA and NYLL.

33. Under the FLSA, an employer "includes any person acting, directly and indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

34. Under the FLSA, multiple employers may qualify as a "joint employer." The economic reality of Defendants' relationship with Plaintiffs and other employees mandates that Marche Madison Entities be treated as joint employers.

35. Operating as joint employers, Defendants engaged in a scheme to deprive Plaintiffs of the benefits and wages required by the FLSA, NYLL, and WTPA, as explained below.

**Defendant Kyung Ho Kim**

36. Defendant Kyung Ho Kim ("Defendant Kim") is the owner, manager, operator, and principal of Marche Madison.

37. Defendant Kim is listed as the "principal" of Marche Madison on their liquor licenses, as per the records of the New York State Liquor Authority.

38. Throughout Plaintiffs' employment, Defendant Kim had the power and authority over operational and personnel decisions at Marche Madison, including the power to discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

39. Defendant Kim was present at Marche Madison at least five (5) to six (6) times a week, if not on a daily basis, to monitor business operations and supervise Marche Madison's employees, including Plaintiffs.

40. Defendant Kim was present at Marche Madison's business premises on a regular basis to review and supervise the operations of Marche Madison, including discussions on menu

items, the hiring of staff, pay practices, and the performance of Marche Madison's employees, including Plaintiffs.

41. Defendant Kim exercised sufficient control over Marche Madison's business operations and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

42. Defendants failed to pay Plaintiffs overtime wages and spread-of-hours premiums during their employment with Defendants.

43. Defendants failed to pay Plaintiffs, the FLSA Collective Plaintiffs, and the Class one and one-half (1½) times their regular wage rates—overtime wages—for hours worked over forty (40) per workweek.

44. At all relevant times hereto, Plaintiffs were employees of Defendants.

45. At all relevant times hereto, Defendants were employers or joint employers of Plaintiffs.

46. At all relevant times hereto, Plaintiffs were non-exempt employees within the meaning of the FLSA, NYLL, and the implementing rules and regulations of the FLSA and NYLL.

47. Mr. Jusuf worked as an organizer, stocker, loader, cashier, cleaner, and sandwich preparer at Marche Madison from approximately January 15, 2024 to approximately July 7, 2025.

48. Mr. Palma worked as a sandwich, cold salad, and fruit preparer at Marche Madison from approximately March 18, 2024 to approximately July 7, 2025.

49. Throughout their respective employment periods, Plaintiffs worked at Marche Madison under Defendants' direction and control.

50. Throughout his employment period, Mr. Jusuf typically worked five (5) days a week, Mondays through Fridays, from 5:00 a.m. to 3:00 p.m.

51. Throughout his employment period, Mr. Jusuf typically worked approximately fifty (50) hours per workweek.

52. Mr. Jusuf was required to work more hours, at the direction of Defendants, when other employees at Marche Madison did not show up for work.

53. In fact, on January 15, 2024, Mr. Jusuf worked 14 hours and 30 minutes from 5:00 a.m. to 7:30 p.m., covering the shift of the cashier who did not show up for work due to her illness.

54. On January 16, 2024, Mr. Jusuf worked 14 hours and 30 minutes from 5:00 a.m. to 7:30 p.m., covering the shift of the cashier who did not show up for work due to her illness.

55. On February 11, 2024, which was Sunday and not Mr. Jusuf's typical workday, Mr. Jusuf was required to come to Marche Madison and work for 6 hours cleaning the store.

56. On February 15, 2024, Mr. Jusuf worked 14 hours and 30 minutes because the employee, named Aaron, did not show up for work that day.

57. On March 23, 2024, which was Saturday and not Mr. Jusuf's typical workday, Mr. Jusuf was required to come to Marche Madison and work for 6 hours setting up a food display.

58. On April 12, 2024, Mr. Jusuf worked 14 hours and 30 minutes because one of the employees did not show up for work.

59. On April 15, 2024, Mr. Jusuf worked 12 hours because one of the employees did not show up for work.

60. On April 16, 2024, Mr. Jusuf worked 12 hours because one of the employees did not show up for work.

61. On April 17, 2024, Mr. Jusuf worked 12 hours because one of the employees did not show up for work.

62. On April 25, 2024, Mr. Jusuf worked 14 hours and 30 minutes because one of the employees did not show up for work.

63. On May 2, 2024, Mr. Jusuf worked 11 hours and 30 minutes because a new employee was hired, and Mr. Jusuf, at the direction of Defendants, was required to provide assistance and training for the new employee.

64. On July 4, 2024, Mr. Jusuf worked 11 hours and 30 minutes because one of the employees did not show up for work due to his illness.

65. On July 8, 2024, Mr. Jusuf worked 14 hours and 30 minutes, covering the shift of the cashier who did not show up for work due to her illness.

66. On July 26, 2024, Mr. Jusuf worked 11 hours and 30 minutes because the cashier left early for the day.

67. On September 27, 2024, Mr. Jusuf worked 14 hours and 30 minutes due to the shortage of employees required for that day, as two of the employees did not show up for work.

68. On December 14, 2024, which was Saturday and not Mr. Jusuf's typical workday, Mr. Jusuf, at the direction of Defendants, was required to work for 7 hours because one of the employees left early for the day.

69. Throughout his employment period, Mr. Jusuf was paid a fixed weekly wage of $1,100.00 regardless of the number of hours he worked.

70. Although Mr. Jusuf had 30 minutes meal break in between, his meal break was regularly interrupted by Defendants due to the shortage of the employees.

71. Mr. Jusuf was responsible for, and required to, opening the restaurant each morning at 5:00 a.m., as he had the keys to the restaurant.

72. Throughout his employment period. Mr. Palma typically worked five (5) days a week, Mondays through Fridays, from 6:00 a.m. to 3:00 p.m.

73. Throughout his employment period, Mr. Palma typically worked approximately forty-five (45) hours per workweek.

74. Mr. Palma was required to work more hours, at the direction of Defendants, when other employees at Marche Madison did not show up for work.

75. In fact, on March 24, 2024, which was Sunday and not Mr. Palma's typical workday, Mr. Palma, at the direction of Defendants, was required to come to Marche Madison and work for 6 hours, preparing sandwiches, cold salad, and fruit.

76. On April 12, 2024, Mr. Palma worked 13 hours and 30 minutes because one of the employees did not show up for work.

77. On April 15, 2024, Mr. Palma worked 11 hours because one of the employees did not show up for work.

78. On April 16, 2024, Mr. Palma worked 11 hours because one of the employees did not show up for work.

79. On April 17, 2024, Mr. Palma worked 11 hours because one of the employees did not show up for work.

80. On April 25, 2024, Mr. Palma worked 13 hours and 30 minutes because one of the employees did not show up for work.

81. On May 2, 2024, Mr. Palma worked 11 hours because a new employee was hired, and Mr. Palma, along with Mr. Jusuf, was required to provide assistance and training for the new employee.

82. On July 4, 2024, Mr. Palma worked 11 hours because one of the employees did not show up for work due to his illness.

83. On August 13, 2024, Mr. Palma worked 11 hours because one of the employees did not show up for work due to his illness.

84. On October 21, 2024, Mr. Palma worked 11 hours because one of the employees quit his job that day.

85. Throughout his employment period, Mr. Palma was paid a fixed weekly wage of $900.00 regardless of the number of hours he worked.

86. Although Mr. Palma had 30 minutes meal break in between, his meal break was regularly interrupted by Defendants due to the shortage of the employees.

87. Plaintiffs worked more than forty (40) hours a week, but they were never paid the proper amount of overtime wages, a blatant violation of the overtime provisions contained in the FLSA and NYLL.

88. Mr. Jusuf performed manual labor in the storage room, cashier section, and in the kitchen of the deli/sandwich section of the restaurant.

89. Mr. Jusuf also performed manual labor of cleaning the store time to time.

90. Mr. Palma performed manual labor in the kitchen of the deli/sandwich and cold salad and fruit sections of the restaurant.

91. Plaintiffs were assigned to said manual labor by Defendants.

92. Plaintiffs were not required to possess any specialized skills in order to perform the assigned work for Defendants.

93. Plaintiffs did not have to supply their own tools and/or equipment in connection with their work for Defendants.

94. Plaintiffs could not set their own work hours.

95. Plaintiffs could not set their own pay rate or rates.

96. Plaintiffs did not have the authority to set other employees' work schedules or hours.

97. Plaintiffs did not have the authority to set other employees' pay rate or rates.

98. Plaintiffs did not have the authority to hire or fire other employees at Marche Madison.

99. Plaintiffs did not have the authority to discipline other employees at Marche Madison.

100. Plaintiffs did not have the authority to manage and/or supervise other employees of Marche Madison.

101. Plaintiffs' job position(s) did not involve compensation through customers' tips.

102. Plaintiffs were not compensated at the proper overtime rate for hours worked in excess of forty (40) hours per week.

103. Defendants knew that Plaintiffs were entitled to overtime wages for those hours that they worked in excess of forty (40) hours per week; despite that, Defendants blatantly disregarded their obligations to pay Plaintiffs overtime wages.

104. Defendants' failure to pay Plaintiffs overtime wages was willful.

105. Defendants knew that Plaintiffs were entitled to spread-of-hours premiums for each day during which Plaintiffs worked shifts that were longer than ten (10) hours.

106. Defendants' failure to pay Plaintiffs spread-of-hours premiums was willful.

107. Defendant Kim was responsible for tracking and recording wage payments distributed to Plaintiffs during Plaintiffs' employment.

108. Defendant Kim was responsible for bookkeeping and maintenance of payroll and time records for the restaurant during Plaintiffs' employment.

109. Despite that, Plaintiffs were not required to clock-in or clock-out when they arrived at the restaurant and when they left the restaurant.

110. During Plaintiffs' employment, Defendants did not track Plaintiffs' hours worked contemporaneously using systems, such as time clock machine, biometric machine, iris scanning or recognition machine, and/or POS machine.

111. During Plaintiffs' employment, Defendants did not record Plaintiffs' hours worked manually using a system, such as pen and paper.

112. Defendants failed to maintain any time records, attendance records, and wage payment records pertaining to Plaintiffs.

113. Defendants did not have any posters, signs, and/or other documents that discuss the requirements of the FLSA and/or NYLL.

114. Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of Plaintiffs' employment as required by the FLSA and NYLL.

115. Defendants failed to furnish Plaintiffs with an accurate wage notice upon hiring or when their rates of pay changed reflecting their minimum and overtime wages Defendants were claiming.

116. Defendants failed to furnish Plaintiffs with wage statements with each payment of their wages throughout their respective employment periods accurately reflecting their minimum and overtime wage rates and total hours worked.

117. Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond mere technical errors or omissions.

118. The damages Plaintiffs suffered because of the underpayment of their wages are directly traceable to Defendants' overt and intentional failure to comply with the WTPA's wage notice and wage statement requirements.

119. Defendants deprived Plaintiffs of accurate wage notices and wage statements in their entirety to conceal the illegality of paying a flat weekly rate regardless of the number of hours that they worked and to avoid paying them their overtime wages and spread-of-hours premiums.

120. Defendants' failure to comply with the WTPA, along with their intentional failure to pay overtime wages and spread-of-hours premiums, was part of a scheme that intended to, and actually did, deprive Plaintiffs of the ability to know if they were being paid correctly and, if not, exactly how much compensation they were entitled to, and led to the underpayment of wages that Plaintiffs allege in this Complaint.

121. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiffs suffered a concrete harm, resulting from Plaintiffs' inability to identify Plaintiffs' employer to remedy their compensation problems, lack of knowledge about the rates of pay they were receiving and/or should have been receiving for their regular hours and overtime hours, terms, and conditions of their pay, and an inability to identify their hourly rates of pay to ascertain whether they were being properly paid in compliance with the FLSA and NYLL.

122. Defendants' willful failure to provide Plaintiffs with wage notices and wage statements prevented Plaintiffs from being able to calculate their hours worked and proper rates of pay and determining if they were being paid time-and-a-half for their overtime hours and spread-of-hours premiums for those days during which Plaintiffs worked shifts that were longer than ten (10) hours, as required by the FLSA and NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

123. Plaintiffs bring the claims in this Complaint arising under the FLSA as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves and all current and former non-exempt employees, including, but not limited to, cooks, food preparers, cashiers, counter persons, organizers, stockers, loaders, and cleaning persons employed by Defendants on or after the date that is three (3) years before the filing of this Complaint (the "FLSA Collective Plaintiffs").

124. The FLSA Collective consists of at least seventy (70) non-exempt employees who have been victims of Defendants' common policies and practices that violated their rights under the FLSA by willfully denying them overtime wages.

125. At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules – all of which have culminated in a willful failure and refusal to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages for each hour worked in excess of forty (40) per workweek. Plaintiffs' claims stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

126. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

127. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective Plaintiffs.

128. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit.

129. Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records.

130. Other non-exempt employees currently or formerly employed by Defendants should have the opportunity to have their claims for violations of the FLSA heard.

131. Certifying this action as a collective action under the FLSA will provide them with notice of the action and allow them to opt-in to such an action if they so choose.

132. Those similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS – NEW YORK

133. Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and of a class consisting of all former and current non-exempt employees, who have worked at Marche Madison on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

134. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

135. The proposed Class is so numerous in that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than two-hundred (200) members of the Class.

136. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices of Defendants, as alleged herein, including: (a) failing to pay for all hours worked and overtime hours; (b) failing to pay spread-of-hours premiums for those days during which the Class Members worked shifts that were longer than ten (10) hours; and (c) failing to provide accurate wage notices and wage statements pursuant to the NYLL.

137. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and the Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

138. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour lawsuits.

139. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

140. Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members, who

are not named in the Complaint, a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

141. Common questions of law and fact exist as to the Class that predominate over questions affecting them individually, including the following:

a. Whether Defendants employed Plaintiffs and the Class Members within the meaning of NYLL;

b. Whether Defendants paid Plaintiffs and the Class Members at the appropriate overtime wage rates for all hours worked in excess of forty (40) hours in a workweek;

c. Whether Defendants paid "spread-of-hours" premiums owed to Plaintiffs and the Class Members working more than ten (10) hours per day, as required by NYLL;

d. Whether Defendants failed to provide Plaintiffs and the Class Members at the time of hiring or whenever there was a change in their rates of pay with a timely notice stating their rates of pay and the basis thereof, whether paid by the hour or otherwise, and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, in violation of NYLL § 195(1);

e. Whether Defendants failed to provide accurate wage statements at the end of every pay period to Plaintiffs and the Class Members in violation of NYLL § 195(3); and

f. The nature and extent of class-wide injury and the measure of damages for those injuries.

142. This action is properly maintainable as a class action under Rule 23(b)(3) of the Fed. R. Civ. P.

## FIRST CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)

143. Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

144. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and they employ or employed Plaintiffs and the FLSA Collective Plaintiffs.

145. Plaintiffs and the FLSA Collective Plaintiffs are employees within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

146. At all relevant times, Marche Madison Entities, both individually and as a single integrated enterprise, had gross annual revenues in excess of $500,000.00.

147. Defendants were required to pay Plaintiffs and the FLSA Collective Plaintiffs one and one half (1½) times their regular wage rates for hours worked over forty (40) per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq*.

148. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good-faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Plaintiffs.

149. Defendants failed to pay Plaintiffs and the FLSA Collective Plaintiffs the overtime wages to which they were entitled under the FLSA.

150. Defendants have intentionally and willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective Plaintiffs the applicable overtime wages.

151. Due to Defendants' willful and intentional violations of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs have suffered damages and are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interests, and reasonable attorneys' fees and costs of the action.

**SECOND CAUSE OF ACTION**
**(NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)**

152. Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

153. Defendants are employers within the meaning of NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations, and they employ or employed Plaintiffs and the Class Members.

154. NYLL and its supporting NYDOL Regulations, such as 12 N.Y.C.R.R. § 146–1.4, required Defendants to pay Plaintiffs and the Class Members one and one-half (1½) times their regular wage rates for hours worked in excess of forty (40) per workweek.

155. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good-faith effort to comply with the NYLL with respect to the compensation of Plaintiffs and the Class Members.

156. Defendants failed to pay Plaintiffs and the Class Members the overtime wages to which they were entitled under the NYLL.

157. Defendants violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Class Members overtime wages for all hours worked over forty (40) per workweek and at the applicable overtime wage rate.

158. Due to Defendants' willful and intentional violations of the NYLL, Plaintiffs and the Class Members have suffered damages and are entitled to recover unpaid overtime wages, liquidated damages, pre- and post- judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CAUSE OF ACTION
## (NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY)

159. Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

160. Defendants are employers within the meaning of NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations, and they employ or employed Plaintiffs and the Class Members.

161. Defendants willfully failed to pay Plaintiffs and the Class Members additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts that were longer than ten (10) hours.

162. By Defendants' failure to pay Plaintiffs and the Class Members spread-of-hours pay, Defendants willfully violated NYLL Article 19, § 650 *et seq*. and its supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. §146–1.6.

163. Due to the Defendants' willful and intentional violations of the NYLL, Plaintiff sand the Class Members suffered damages and are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, liquidated damages, and reasonable attorneys' fees and costs of the action.

**FOURTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW AND WAGE THEFT PREVENTION ACT – FAILURE TO PROVIDE WAGE NOTICES)**

164. Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

165. The NYLL and WTPA, as well as the NYDOL's interpretive regulations, such as, but not limited to, 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

166. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs and the Class Members at the time of hiring and whenever there was a change to rates of pay with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

167. Upon information and belief, Defendants chose not to provide this information to Plaintiffs and the Class Members to avoid informing them of their rights under the NYLL and therefore avoid paying them the proper minimum and overtime wage rates due to them.

168. Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Class Members suffered damages and are entitled to recover from Defendants statutory damages of $50 per workday that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-b).

**FIFTH CAUSE OF ACTION**
**(NEW YORK LABOR LAW AND WAGE THEFT PREVENTION ACT – FAILURE TO PROVIDE WAGE STATEMENTS)**

169. Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

170. The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

171. Throughout Plaintiffs' and the Class Members' employment with Defendants, Defendants paid Plaintiffs and the Class Members without providing a wage statement at the end of every pay period accurately listing the dates of work covered by that payment of wages, name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked, gross wages, deductions and/or allowances, if any, and all of their hours worked per workweek, especially those over forty (40), in violation of NYLL § 195(3).

172. Upon information and belief, Defendants chose not to provide this information to Plaintiffs and the Class Members to avoid informing them of their rights under the NYLL, including their correct minimum and overtime wage rates and hours worked, and so avoid paying them at the proper rates due to them.

173. Due to Defendants' violation of NYLL § 195(3), Plaintiffs and the Class Members suffered damages and are entitled to recover from Defendants statutory damages of $250 per workday that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

174. Defendants deprived Plaintiffs of accurate wage notices and wage statements in their entirety to conceal the illegality of paying a flat weekly rate regardless of the number of hours that they worked and to avoid paying them their overtime wages and spread-of-hours premiums.

175. Defendants' failure to comply with the WTPA, along with their intentional failure to pay overtime wages and spread-of-hours premiums, was part of a scheme that intended to, and actually did, deprive Plaintiffs of the ability to know if they were being paid correctly and, if not, exactly how much compensation they were entitled to, and led to the underpayment of wages that Plaintiffs allege in this Complaint.

176. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiffs suffered a concrete harm, resulting from Plaintiffs' inability to identify Plaintiffs' employer to remedy their compensation problems, lack of knowledge about the rates of pay they were receiving and/or should have been receiving for their regular hours and overtime hours, terms, and conditions of their pay, and an inability to identify their hourly rates of pay to ascertain whether they were being properly paid in compliance with the FLSA and NYLL.

177. Defendants' willful failure to provide Plaintiffs with wage notices and wage statements prevented Plaintiffs from being able to calculate their hours worked and proper rates of pay and determining if they were being paid time-and-a-half for their overtime hours and spread-of-hours premiums for those days during which Plaintiffs worked shifts that were longer than ten (10) hours, as required by the FLSA and NYLL.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court enter an order and judgment:

a. certifying the case as a collective action for the violations of the FLSA alleged in the Complaint, designating the named Plaintiffs as the representatives of the FLSA Collective Plaintiffs, and designating Plaintiffs' attorneys as counsel for the FLSA Collective Plaintiffs;

b. certifying this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint, certifying Plaintiffs as class representatives, and designating Plaintiffs' attorneys as class counsel;

c. authorizing the issuance of notice at the earliest possible time to all potential FLSA Collective members who worked for Defendants within the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

d. declaring that Defendants have violated the overtime wage provisions of the FLSA;

e. declaring that Defendants have violated the overtime wage provisions of the NYLL;

f. declaring that Defendants unlawfully failed to pay Plaintiffs and the Class Members spread-of-hours pay;

g. declaring that Defendants violated the notice and wage statement provisions of the NYLL and WTPA;

h. enjoining future violations of the FLSA and NYLL by Defendants;

i. awarding Plaintiffs, the FLSA Collective Plaintiffs, and the Class damages for unpaid overtime wages under the FLSA and NYLL;

j. awarding Plaintiffs and the Class damages for spread-of-hours pay and statutory damages under the NYLL and WTPA;

k. awarding Plaintiffs, the FLSA Collective Plaintiffs, and the Class liquidated damages pursuant to the FLSA and NYLL;

l. awarding Plaintiffs, the FLSA Collective Plaintiffs, and the Class pre- and post-judgment interest pursuant to the NYLL;

m. awarding Plaintiffs, the FSLA Collective Plaintiffs, and the Class reasonable attorneys' fees and costs pursuant to the FLSA and NYLL; and

n. awarding such other, further, and different relief as the Court deems just, proper, and equitable.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
July 10, 2025

**AHNE & JI, LLP**

By: /s/ Younghoon Ji_____________
By: Younghoon Ji, Esq.
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel. (212) 594-1035
Email: yji@ahnejillp.com